**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-0957-WJM

VANGELA G. STOKES, an individual,

Plaintiff,

v.

ANDREW M. SAUL, Commissioner of the Social Security Administration,

Defendant.

---

## ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

---

This matter is before the Court on review of Defendant Commissioner of the

Social Security Administration Andrew M. Saul's (the "Commissioner's") decision

denying Plaintiff Vangela Stokes' ("Plaintiff's") application for disability insurance

benefits.  Plaintiff filed an opening brief on June 17, 2019 (ECF No. 20), the

Commissioner filed a response on August 7, 2019 (ECF No. 23), and Plaintiff filed a

Reply on June 9, 2019 (ECF No. 24).  For the reasons set forth below, the

Commissioner's decision to deny Plaintiff's application for disability insurance benefits

is affirmed.

## I.  BACKGROUND

On October 30, 2015, Plaintiff Vangela Stokes applied for disability insurance

benefits, alleging a disability onset date of August 30, 2015.  (ECF No. 11-2 at 18.)

Plaintiff was born in May 1957 and was 58 years old at the alleged onset date.  (ECF

No. 11-3 at 3.)  Plaintiff suffers from coronary artery disease, and had a heart attack (a

"myocardial infarction," in medical terms) in August 2015.  (ECF No. 11-7 at 4.)  Plaintiff asserts that, since her heart attack, she has suffered from chronic fatigue and accordingly is unable to engage in substantial gainful activity.  (ECF No. 11-6 at 4–5.)  Plaintiff has also been diagnosed with degenerative joint disease of the left shoulder.  (ECF No. 11-9 at 11.)

Plaintiff's application for disability benefits initially was denied on April 1, 2016.  (ECF No. 11-2 at 18.)  Plaintiff thereafter requested a hearing in front of an administrative law judge ("ALJ"), and that hearing took place on January 4, 2018.  (*Id.*)

## II.  THE ALJ'S DECISION

The ALJ denied Plaintiff's claim for benefits in a decision dated March 21, 2018.  (*Id.* at 26.)  In the sequential evaluation process required by law,[1] the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (*Id.* at 20.)  At step two, the ALJ found that Plaintiff's coronary artery disease and degenerative joint disease constitute severe impairments.  (*Id.* at 13.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  (*Id.* at 21.)

As to Plaintiff's residual-functional capacity ("RFC"), the ALJ found as follows:

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1998).  The claimant has the burden of proof through steps one to four; the Commissioner has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[T]he claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 404.1567(b) except the claimant can sit, stand, and walk for six hours in an eight-hour workday, and lift and/or carry 20 pounds occasionally and 10 pounds frequently. She must have work that does not require the climbing of ladders, ropes, and scaffolds. The claimant can occasionally climb ramps and stairs, frequently stoop, kneel, crouch, and crawl, and [can frequently reach overhead with her left arm]. She can [ ] never have exposure to extreme cold[ ] [or] excessive vibration, but she can have occasional exposure to irritants such as fumes, odors, dusts, and gases.

(*Id.* at 22.)

At step four, the ALJ determined that, given Plaintiff's RFC, Plaintiff is capable of performing her past relevant work as a loan processor and bank teller.[2] (*Id.* at 24.) At step five, taking into account Plaintiff's age (62), education, work experience, and RFC, the ALJ also determined that there are other jobs that exist in significant numbers in the national and regional economies that Plaintiff can perform. (*Id.* at 25.) Based on the hearing testimony from a vocational expert, the ALJ determined that Plaintiff could perform such jobs as "telemarketer," "hostess/greeter," "case aid," and "general clerk." (*Id.* at 26.) Consequently, the ALJ found that Plaintiff "is not disabled under sections 216(i) and 223(d) of the Social Security Act." (*Id.* at 26.)

### III. LEGAL STANDARD

The Court's review of a determination that a claimant is not disabled is limited to determining whether the record contains substantial evidence to support the

---

[2] The record reflects that Plaintiff worked in different roles for at least one bank from 2002 to 2014. The ALJ stated that such work "qualifies as past relevant work because [Plaintiff] worked there within the last 15 years, she worked there for at least six years which was long enough to learn the required skills for SVP five level work, and she earned over substantial gainful activity levels." (ECF No. 11-2 at 24–25.)

Commissioner's decision and whether the correct legal standards were applied. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "Evidence is not substantial if it is overwhelmed by other evidence or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. However, the Court "may not reweigh the evidence nor substitute [its] judgment" for the Commissioner's. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). Additionally, "[t]here are specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988). "Failure to follow these rules constitutes reversible error." *Id*.

## IV. ANALYSIS

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ's RFC determination was not supported by substantial evidence; and (2) that the ALJ committed reversible legal error in weighing the opinion of Dr. Kathleen Brown, M.D. ("Dr. Brown"). (ECF No. 15 at 3.) The Court rejects these arguments.

### A. The Administrative Record

On August 30, 2015, Plaintiff presented to Parkview Medical Center with a heart attack. (ECF No. 11-7 at 4.) Plaintiff underwent a "percutaneous coronary intervention

to the right coronary artery," and "was then transferred to medical intensive care unit in stable condition." (*Id.* at 8.) Dr. Peter Lochow, M.D., concluded that "[t]hree-vessel coronary artery disease with severe distal right coronary artery [was] the culprit lesion for the acute inferior wall myocardial infarction." (*Id.* at 8.) Plaintiff was discharged from the hospital the following day. (*Id.* at 9.)

Thereafter, Plaintiff underwent followup examinations with Pueblo Cardiology. (*Id.* at 38–54.) Treatment notes indicate that her heart condition was stable, but she began to complain of chronic fatigue. (*Id.* at 38–54.) Treatment notes from October 2015 state that Plaintiff "feels markedly improved and is able to do her daily chores." Similarly, treatment notes from December 2015 state that Plaintiff "feels occasionally fatigued but is able to do her daily chores without problems." (*Id.* at 38.)

Plaintiff was "discharged from outpatient Cardiac Rehab, Phase II" in February 2016. (*Id.* at 45.) Treatment notes state that Plaintiff completed six cardiac rehabilitation treatments, that she "tolerated 52 minutes of exercise with moderate resistance" and "is continuing with her home exercise and walking program," and that Plaintiff had, "in addition to exercise, resumed all of her previous activities including work." (*Id.* at 45.)

Plaintiff visited with Dr. Brown at Pueblo Cardiology twice in August 2016, and once in October 2017. (ECF No. 11-9 at 2–10.) Plaintiff continued to complain of chronic fatigue. (*Id.*) Treatment notes from one of the August visits state that Plaintiff's "fatigue does not sound like a symptom of recurrent symptomatic coronary artery disease. It may be related to sleep apnea, beta blocker use, depression/anxiety or a

combination of these."  (*Id.* at 9.)

In October 2017, on a check-box form titled "Physician's Questionnaire for Social Security Claim" (the "Questionnaire"), Dr. Brown opined that, as a result of Plaintiff's heart condition, Plaintiff needs to lie down for several hours 1–3 times per day.  (ECF No. 11-7 at 52.)  Dr. Brown further opined that Plaintiff is not capable of sustaining full-time employment, and that the maximum Plaintiff could work is for 3 hours per day, 4 days a week.  (*Id.*)

In Plaintiff's function report, submitted to the state agency responsible for conducting the initial determination of disability, Plaintiff asserted that on a daily basis she is able to, among other things: pay bills, go to work, walk to the grocery store, fix lunch and dinner, wash dishes, feed her cats, do laundry, and iron.  (ECF No. 11-6 at 4–11.)

At the hearing before the ALJ, Plaintiff testified that she works as a server at a restaurant, four days per week, from 9:30 am to 2:00 pm.  (ECF No. 11-2 at 45, 52–53.) Plaintiff stated that when she gets home from work, she is "literally exhausted, just after those four hours.  And there's nights I'm in bed at 7:30.  And I can sleep till 7:00 the next morning."  (*Id.* at 52.)  Plaintiff further testified that she and her husband occasionally visit her sister-in-law, who lives three doors down from Plaintiff, that she takes a short walk in the morning and at night, and that she traveled to Georgia in October 2017 to visit her granddaughter.  (*Id.* at 46–48.)  When asked by her attorney whether Plaintiff thought she could work for eight hours in a day if she was only "sitting at a desk and putting paperwork together," Plaintiff replied, "No. . . . I've always had jobs where I'm around people.  And that's why waitressing is good for me."  (*Id.* at 54.)

6

**B.      Substantial Evidence for the ALJ's RFC Determination**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  (ECF No. 15 at 3.)  The Court disagrees.

In formulating Plaintiff's RFC, the ALJ relied on Plaintiff's treatment notes, function report, and hearing testimony, which together constitute substantial evidence for the ALJ's RFC determination.  For example, Plaintiff testified that she works as a server at a restaurant for four hours per day, four days per week.  (ECF No. 11-2 at 45, 52–53.)  The ALJ could reasonably have found that this is consistent with her ability to perform on a full time basis such "light work" as a loan processor or bank teller, her previously held jobs that are undoubtedly much less physically demanding than her current job.  Plaintiff by her own admission has no problem carrying out daily activities, such as walking to the grocery store, playing with her cats, fixing lunch and dinner (spending up to an hour doing so), ironing, and going on short walks twice a day.  (ECF No. 11-6 at 4–11; ECF No. 11-2 at 48.)

The only evidence in the record that casts doubt on Plaintiff's RFC is Dr. Brown's Questionnaire.  Dr. Brown's opinion that Plaintiff needs to rest for several hours 1–3 times per day is not compatible with an ability to perform even light work full-time.  The ALJ, however, permissibly accorded little weight to Dr. Brown's opinion as explained in Part III.C, below.

Moreover, even giving Dr. Brown's opinion as reflected in the Questionnaire full credence, it does not by any means "overwhelm" the evidence supportive of the ALJ's determination.  *See Musgrave*, 966 F.2d at 1374.  Indeed, aside from this single "check the box" Questionnaire, there does not appear to be any objective medical evidence

that is inconsistent with the ALJ's RFC determination, such as clinical or physical exertion test results, and the like.  Plaintiff continuously reported fatigue at her medical appointments following her heart attack, but as the ALJ stated (ECF No. 11-2 at 24), treatment notes from those visits reveal nothing otherwise remarkable about her functional capacity.  (*See, e.g.*, ECF No. 11-8 at 2–5.)

Because the ALJ reasonably found that Plaintiff was capable of light work (with the additional restrictions imposed), the Court will not disturb the ALJ's RFC determination.[3]  *See Grogan*, 399 F.3d at 1262.

## C.     The ALJ's Weighing of Dr. Brown's Opinion

Plaintiff also argues that the ALJ committed reversible legal error in giving "little weight" to the opinion of Dr. Brown as expressed in the Questionnaire.  (ECF No. 15 at 3.)  The Court again disagrees.

First, Plaintiff's argument appears to be predicted on the assumption that Dr. Brown is a "treating medical source" under the applicable regulations (*see* ECF No. 15 at 17).  But the veracity of this assumption this is far from clear.  To be considered a treating source, a medical source must either have "an ongoing treatment relationship" with the patient, or see the patient "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)."  20 C.F.R. § 404.1527(a)(2).  Further:

> We may consider an acceptable medical source who has treated you or evaluated you only a few times or only after

---

[3] It should be noted that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

long intervals (e.g. twice a year) to be your treating medical source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability.

(*Id.*)

The record indicates that Dr. Brown only evaluated Plaintiff twice in August 2016, and once in October 2017. (ECF No. 11-9 at 2–10.) The Court does not consider this to be an "ongoing treatment relationship," and Plaintiff does not argue, nor is there evidence in the record to suggest, that three consultations over a period of 14 months is typical for the treatment of chronic fatigue.

Moreover, even if Dr. Brown were a treating medical source, the ALJ gave legitimate reasons for discounting Dr. Brown's opinion. The opinion of a treating medical source is not entitled to controlling weight if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques,"[4] or if it is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ explained that she gave little weight to Dr. Brown's opinion in part because it was not supported "with any evidence of functional limitations." By this statement, the Court thinks it clear the ALJ was referring to the fact that the Questionnaire does not endeavor to explain, let alone cite any medical evidence as

---

[4] Courts, including the Tenth Circuit, have recognized that check-box evaluation forms, filled out for the purpose of a disability claim, by themselves are of limited probative value. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987); *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004).

being the basis for, its conclusions as to Plaintiff's functional capacity. This is a legitimate reason for not giving the opinion controlling weight. Moreover, the Court notes Dr. Brown's suspect opinion that the Plaintiff "needs to lie down *for several hours 1–3 times per day*" (emphasis added), in the face of the reality that her patient works 4 ½ hours per day, four days per week, in the physically demanding position of a restaurant waitress.

The ALJ also stated that Dr. Brown's opinion is inconsistent with Plaintiff's current work schedule, the many unremarkable physical examinations in the record, and Plaintiff's "ability to engage in exercise, including exercise with moderate resistance that lasts 52 minutes." (*Id.* at 24.) The Court agrees. This is a legitimate reason to not give Dr. Brown's opinion controlling weight.

Of course, even if not given controlling weight, a treating source's medical opinion is still entitled to deference, and must be weighed using the regulatory factors applicable to any other acceptable medical source's opinion. 20 C.F.R. § 404.1527(c)(2); *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citation omitted). Supportability and consistency with the evidence both are factors that the Commissioner should consider in weighing a medical opinion. 20 C.F.R. §§ 404.1527(c)(3), 404.1527(c)(4). As explained above, the ALJ legitimately found that Dr. Brown's opinion was not supported by and was inconsistent with substantial evidence in the record.[5] As such, the ALJ permissibly accorded little weight to the

---

[5] "[T]he ALJ's decision need not include an explicit discussion of each [regulatory] factor" applicable to the weighing of opinion evidence. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

opinion of Dr. Brown.

Finding there to be substantial evidence for the ALJ's RFC determination, as well as no legal error in the ALJ's weighing of Dr. Brown's opinion, the Court will affirm the Commissioner's denial of Plaintiff's application for disability insurance benefits.

## V. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED. The Clerk shall enter judgment in favor of the Commissioner and against Stokes, and shall terminate this case. The parties shall bear their own costs.

Dated this 24th day of February, 2020.

BY THE COURT:

William J. Martinez
United States District Judge